```
1                UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS

3                           No. 1:14-cv-12550-WGY

4


5   XIAOYAN TANG,
             Plaintiff
6


7   vs.


8


9   CITIZENS BANK, N.A., et al
             Defendants
10


11
                         *********
12


13              For Hearing Before:
               Judge William G. Young
14


15              Summary Judgment


16
                United States District Court
17              District of Massachusetts (Boston)
                One Courthouse Way
18              Boston, Massachusetts 02210
                Wednesday, July 22, 2015
19


20                       *******


21


22         REPORTER: RICHARD H. ROMANOW, RPR
                 Official Court Reporter
23            United States District Court
      One Courthouse Way, Room 5510, Boston, MA 02210
24              bulldog@richromanow.com


25
```

```
 1                    A P P E A R A N C E S

 2


 3    XIAOYAN TANG
         P.O. Box 92
 4       Menlo Park, CA 94026-0092
         (617) 319-3126
 5       Email: soareagles@gmail.com
         Pro Se Plaintiff
 6


 7    MARK W. BATTEN, ESQ.
         Proskauer Rose, LLP
 8       One International Place, 22nd Floor
         Boston, MA 02110
 9       (617) 526-9850
         Email: Mbatten@proskauer.com
10       For Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          P R O C E E D I N G S
 2          (Begins, 2:05 p.m.)
 3          THE CLERK:  Civil Matter 14-12550, Tang versus
 4   Citizen's Bank.
 5          THE COURT:  Now, Ms. Tang, come on up.
 6          (Plaintiff moves to podium.)
 7          THE COURT:  And, Ms. Tang, you're representing
 8   yourself.
 9          And representing Citizen's Bank?
10          MR. BATTEN:  Good afternoon, your Honor, Matthew
11   Batten, Sr. from the firm, Proskauer Rose.
12          THE COURT:  Now, this is their motion for summary
13   judgment.  You oppose it, Ms. Tang.  But I think I want
14   to start with you, having read the papers.
15          Your claim is one for sexual harassment?
16          MS. TANG:  Yes, your Honor.
17          THE COURT:  Which is a cognizable -- a claim that
18   we deal with here in this court.
19          MS. TANG:  Yes.
20          THE COURT:  I've carefully read over the papers
21   and I've looked at each of the matters that you claim
22   constitute sexual harassment.
23          Now, in a motion like this, I have to take
24   everything you say as true.  They don't get to say it's
25   not true.  That's a matter for trial.  So I've done
```

that. And I also recognize I have to take all the matters together, I have to think of every one of them, not just take one in isolation. So I recognize that.

Having said that, what do you think is the strongest indication of sexual harassment here?

MS. TANG: At our meeting he had broken down the words of everything, he had kept it, told me, "This is your ass," "This is my ass," anything -- had basically approached me and -- well, I felt so scared, just -- and in the meantime he had told me he had great control over my career and my job with Citizen's Bank.

THE COURT: But -- very well, you answered my question.

There was some foul-up in the procedures of the bank. He's your supervisor. He's disturbed about the foul-up. And so we take it he says, "This is your ass, this is my ass," and then he physically approaches you. Now that's probably a rather boorish choice of words, but I don't really see the sexual harassment there. The same terms -- not particular pleasant, but the same terms could be used between people of the same gender, and it's that type of problem that I'm having with your whole case.

MS. TANG: He motioned me. It's not just a thing --

```
 1          THE COURT:  He what?
 2          MS. TANG:  He motioned me, he used his hands and
 3  he did something -- I think it's very dirty stuff, and
 4  he had located my lower body, and he basically
 5  approached me --
 6          THE COURT:  Well, where -- well, physically
 7  approached you is not touching you.
 8          MS. TANG:  Well --
 9          THE COURT:  There's nothing in these papers that
10  you've ever been touched.  Nothing.
11          You don't now say that that happened, do you, that
12  you were touched?
13          (Silence.)
14          THE COURT:  Each of these incidents are statements
15  or leering.  I give you every everything -- everything
16  you've said for purposes of this hearing, I believe
17  that, I have no question with any of that, but you've
18  never said anyone touched you, certainly not the
19  supervisor against whom these complaints are made.
20          MS. TANG:  Sexual harassment states -- in order to
21  have sex he just uses that to advance me, demand me, and
22  as a result -- I got it as a result.  And he knew I
23  didn't --
24          THE COURT:  What did he demand of you?  There's no
25  claim he demanded any sexual favors from you?
```

```
 1        MS. TANG:  Many occasions.  It's not just a single
 2   instance.
 3        THE COURT:  But on many occasions, what?  That's
 4   what I'm trying to get at.
 5        MS. TANG:  At the first meeting he already ask me
 6   whether I was married, and he say whether I had
 7   boyfriend.  And he talked about Asian women, um,
 8   obedient.
 9        THE COURT:  Yes.
10        MS. TANG:  And he talked about his Thai girls.
11   That meeting was supposed to look into my achievements
12   in my previous department.  He didn't talk about
13   anything about it.
14        THE COURT:  But you see those things -- I accept
15   -- for this hearing I accept he said those things.  They
16   -- under the law, unless there's more to it, don't
17   constitute sexual harassment.
18        What case -- this is what I usually have to ask a
19   lawyer, but you're here without a lawyer.
20        What case have you that suggests that these
21   statements -- and I'm not endorsing them, they're not
22   appropriate, they're inappropriate statements to be
23   asked, because they're not job-related, on an interview,
24   you're right, but it doesn't affirmatively prove sexual
25   harassment.  What case?
```

```
 1          MS. TANG:  Sexual harassment doesn't necessarily
 2     say, "Oh, girl, we go to a room," it's not he, the
 3     supervisor -- he needs to use his own authority, he use
 4     it to say to you, "If you do not accept my sexual
 5     demands, I'm going to kick you out of the bank, the last
 6     resort."
 7          THE COURT:  Okay.  But what is the evidence from
 8     which any reasonable factfinder -- you framed the issue
 9     correctly, you're right, sexual harassment does not have
10     to be "come with me to a room with the idea of engaging
11     in sex," you're right, but where from what you have set
12     out here could it be argued, could I let you argue to a
13     jury from these -- and I'll take them as facts, that all
14     these circumstances taken together constitute "I am your
15     supervisor, I have control over your career, and
16     therefore you'll submit to me sexually," what supports
17     that?
18          MS. TANG:  Your Honor, he used his false, um,
19     review and on one hand he say that I crashed the bank
20     computer, I caused the system crash.  And it's
21     ridiculous.  I have a marketing degree in finance.  The
22     only bank computer -- and on other hand, he kept
23     assigning me significant projects and directed it be
24     presented to the bank executives.  And on other hand, he
25     called me in to say that "You have to accept the -- what
```

```
 1   my performance to you, otherwise I would have kicked you
 2   out of the bank."  And also he say that, "Who you date
 3   and who your boyfriend was?"  "Who you dated?"  I
 4   refused to him many many times.  I stated, "This is my
 5   personal business."  And I was complying with the bank
 6   policy and he didn't care.  He said, "You must tell me
 7   right now, otherwise I would kick you out of the bank."
 8           THE COURT:  "You must tell me" what?
 9           MS. TANG:  Must tell him right away my boyfriend,
10   who was my boyfriend.  Who am I --
11           THE COURT:  Now, wait a minute.  Where in these
12   papers -- where is that evidence where he said anything
13   like "You must tell me now who your boyfriend is or I
14   will kick you out of the bank," where is that?
15           MS. TANG:  I'm pointing it out.  For this summary
16   judgment motion I only answered it -- answered it, what
17   it was presenting, and during the deposition I clearly
18   say what --
19           THE COURT:  Where in the deposition?
20           MS. TANG:  Um, they -- all the important things I
21   told.  The deposition -- and the bank had took the
22   deposition for me.  I said at the meeting, I said he
23   demanded of me about my dating relationship.  I said a
24   lot of things.
25           THE COURT:  I know.  I have in the papers this
```

business about "It's your ass, it's my ass." I have in the papers the allegations about marital status and dating. Today you've said something further than that.

Yeah, thank you very much.

(Hands to judge.)

MR. BATTEN: Your Honor, if I may? I may be able to clear this up a little bit.

THE COURT: Yes, I'll hear you.

MR. BATTEN: Okay.

Ms. Tang, um, the bank came to learn that Ms. Tang was dating an executive of the --

THE COURT: Oh, this is the conflict of interest business?

MR. BATTEN: Correct.

THE COURT: All right.

Now, you see that's their answer to this, that -- and it's not their business who your boyfriend is except the boyfriend is a client of the bank or he's a, um -- according to the evidence here, he was a top executive of a company that was one of the bank's clients, and you pass on loans to that company. So they say, "Well, we have a right to know about that."

What is your answer to that?

MS. TANG: Your Honor, first, he knew, he told me he knew my boyfriend for a long time. Not a surprise to

```
 1   me.  So there's no any interest of conflict, that's just
 2   what his excuse is.
 3           Second, I was fully compliant with the Bank policy
 4   --
 5           THE COURT:  But isn't it true that this individual
 6   was in fact an executive of one of the bank's clients to
 7   whom the bank had made loans?
 8           MS. TANG:  Yeah, that was true, your Honor, but
 9   anything I told him we brought up at the time I told
10   him, and he said to me, confessed to me, he knew that
11   for a long time, that I had a boyfriend, and that
12   person's name, because he asked a lot of persons to spy.
13   It was a few months ago.  He already knew that.
14           So second, your Honor, he -- and what did he say?
15   There's nothing related to company interest.  He knew I
16   was --
17           THE COURT:  Well, you say it wasn't --
18           MS. TANG:  -- it was the policy.
19           THE COURT:  Yes, but it's not disputed that this
20   particular fellow was an executive of a company that --
21   to whom the bank had made and was contemplating making
22   loans.
23           All right.  Look, I've read all these materials
24   with great care.  Now, I'm on record as saying that
25   courts are too quick to grant summary judgment in gender
```

1  discrimination and sexual harassment cases and I
2  recognize that there has been at least one case where I
3  have granted summary judgment and been reversed, in an
4  employment discrimination case, but I've gone over ever
5  line of what you've submitted and taken all together, in
6  light of the law as I understand it, they have the right
7  to bring a motion for summary judgment and I must follow
8  the law as it is declared.  And if I take everything
9  your way, I rule -- I'm not finding anything because I
10 can't find anything, I rule, I state, as a matter of
11 law, that, if we take everything your way, it does not
12 constitute a triable issue of sexual harassment.  Now if
13 I'm wrong, you can take the matter to the Court of
14 Appeals.
15      But the motion for summary judgment is allowed.
16 Judgment enters for Citizen's Bank.
17      MR. BATTEN:  Thank you, your Honor.
18      THE COURT:  That's the order.
19      (Ends, 2:15 p.m.)

# C E R T I F I C A T E

I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do hereby certify that the foregoing record is a true and accurate transcription of my stenographic notes before Judge William G. Young, on Wednesday, July 22, 2015, to the best of my skill and ability.

/s/ Richard H. Romanow 08-25-15
_____
RICHARD H. ROMANOW    Date